UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.

DEREK MCQUILLER,

        Defendant.
_____

15-CR-131
DECISION AND ORDER

"Count 1" of the Indictment charged defendant Derek McQuiller with "knowingly, intentionally and unlawfully possess[ing] with intent to distribute cocaine." Docket Item 1 at 1. "Count 2" of the Indictment charged McQuiller with "knowingly, intentionally and unlawfully possess[ing] with intent to distribute, and distribut[ing], marijuana." *Id.* at 2. Both Counts charged violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

On January 26, 2016, at the conclusion of a one-week trial, the jury convicted McQuiller on Count 1 but acquitted him on Count 2. Pending before this Court are McQuiller's post-trial motions seeking either a judgment of acquittal, under Federal Rule of Criminal Procedure 29, or a new trial, under Federal Rule of Criminal Procedure 33. *See* Docket Items 76 & 77. For the reasons that follow, the motions are DENIED.

## I. LEGAL STANDARDS

### A. RULE 29

After a jury verdict, a defendant may challenge the sufficiency of the evidence presented at trial by moving for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c)(1). "A Rule 29 motion should be granted only if the district court concludes there is 'no evidence upon which a reasonable mind might fairly conclude

guilt beyond a reasonable doubt.'" *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (quoting *United States v. Taylor,* 464 F.2d 240, 243 (2d Cir. 1972)).  Thus, to be entitled to relief under Rule 29, McQuiller "must show that when viewing the evidence in its totality, in a light most favorable to the government, and drawing all inferences in favor of the prosecution, no rational trier of fact could have found him guilty." *Irving*, 452 F.3d at 117.

### B.     RULE 33

The Court also may, "[u]pon the defendant's motion, . . . vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  "A district court should grant a new trial motion if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998) (quoting *Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 370 (2d Cir. 1988)).  Although the Second Circuit affords "district courts greater deference to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," this Court must nonetheless exercise its Rule 33 authority "sparingly" and only in "the most extraordinary circumstances." *United States v. Cote*, 544 F.3d 88, 101 (2d Cir. 2008) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

## II.  DISCUSSION

McQuiller offers three arguments in support of his two post-trial motions.  The Court will address each of these arguments in turn.

### A.  SUFFICIENCY OF THE EVIDENCE

In both his motions, McQuiller argues that "[n]ecessarily, the jury had to base its decision on the testimony of [Kimberly] Van Elk," who was "unbelievable as a matter of law." Docket Item 76 at 2 (¶ 3); Docket Item 77 at 2 (¶ 3).  In support of this argument, McQuiller cites *United States v. Boissoneault*, 926 F.2d 230 (2d Cir. 1991), a case in which the Second Circuit concluded that the evidence "was insufficient to justify a rational trier of fact to find beyond a reasonable doubt that [the defendant] had the requisite intent to distribute cocaine." 926 F.2d at 235.  According to McQuiller:

> The only difference between *Boissoneault* and [this case] is Ms. Van Elk, a witness who is simply not credible.  The Court should not distinguish [this case] from *Boissoneault* based on Ms. Van Elk's testimony alone, which has been inconsistent at every stage of this case.

Docket Item 77 at 3 (¶ 6); *see also* Docket Item 76 at 4.

The Court disagrees.  The entirety of Van Elk's testimony was not – as McQuiller claims – "unbelievable as a matter of law."  *See generally United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).[1]  Moreover, while Van Elk's testimony indeed distinguishes this case from *Boissoneault,* that testimony is not the only difference between *Boissoneault* and this case.

*Boissoneault*, like this case, involved a defendant who was convicted of possessing with intent to distribute about five grams of cocaine – a relatively small

---

[1] As the *Sanchez* court explained, courts ordinarily must "defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses."  *Sanchez,* 969 F.2d at 1414.  Only in exceptional circumstances, such as when a witness's testimony is "patently incredible or defies physical realities," may a court reject the testimony "despite the jury's evaluation."  *See id.*; *see also United States v. Cote*, 544 F.3d 88, 102 (2d Cir. 2008) (citing *Sanchez* and concluding that "none of the testimony in this case was incredible as a matter of law").

3

quantity not inconsistent with personal use.  *See Boissoneault*, 926 F.2d at 234.  In *Boissoneault,* however, the government presented testimony from only five witnesses, none of whom shed any light on the defendant's intent:  the officer who arrested the defendant and found the cocaine; three witnesses who testified regarding chain of custody or lab testing of the cocaine; and a Special Agent with the Drug Enforcement Agency, who testified as an expert witness.  *See id.* at 231.  The Second Circuit described the opinions of the expert witness as "conclusory" and found that there was "virtually no evidence from which the requisite criminal intent – intent to distribute – [could] be inferred."  *Id.* at 233-34.

 Here, in addition to testimony from such law enforcement witnesses, the government presented the testimony of an eyewitness:  Kimberly Van Elk.  On the night of April 22, 2015, Van Elk was driving in the Town of Tonawanda when town police stopped her for a traffic violation.  McQuiller was in the passenger's seat.  The police officers saw objects thrown from the vehicle, and they recovered a plastic bag containing 10 individually packaged baggies of cocaine (totaling more than three grams) apparently thrown from the passenger's window and a single bag of marijuana apparently thrown from the driver's window.  The officers then arrested both McQuiller and Van Elk and found four additional baggies of cocaine – one in the car and three in McQuiller's holding cell (bringing the total to approximately five grams).

 At trial, McQuiller challenged the government's evidence with respect to the requisite criminal intent – i.e., intent to distribute.  As in *Boissoneault*, defense counsel argued that the amount of drugs was consistent with personal use.  With respect to that

4

argument, Van Elk's testimony was important evidence; in fact, it was sufficient evidence of McQuiller's having the requisite intent to distribute. But that testimony, discussed in more detail below, is not the only evidence that distinguishes this case from *Boissoneault*.

Unlike the evidence in *Boissoneault*,[2] the physical evidence in this case included 14 baggies, each containing a small amount – approximately .35 grams – of cocaine. According to the detailed expert testimony of Special Agent Anthony Casullo, the amount in each small baggie was equivalent to a "dosage unit" commonly sold in street-level transactions.[3] Special Agent Casullo testified that cocaine users do not typically buy multiple baggies of cocaine at one time but that street-level dealers typically carry 10-20 individually packaged dosage units for sale. He also testified, based on his experience conducting or witnessing numerous undercover purchases of cocaine, that when a user purchases multiple grams of cocaine at one time, it invariably is packaged in a single bag, not in multiple bags each containing a single dose.

Special Agent Casullo thus provided valuable, non-conclusory testimony regarding the physical evidence that went beyond the evidence in *Boissoneault*. He testified regarding the foundation for his opinions, did not offer an opinion on the ultimate issue of McQuiller's intent, and did not improperly marshal the evidence for the

---

[2] In *Boissoneault,* the police found four bags of "differing amounts" of cocaine on the defendant. *Boissoneault,* 926 F.2d at 231. They later found a fifth, larger bag in the defendant's cell. *See id.*

[3] As Special Agent Casullo testified: "A dosage unit is around .3 grams. So, one third of a gram, around."

prosecution. And McQuiller's post-trial motions do not even address Special Agent Casullo's testimony.

In sum, the testimony of Special Agent Casullo alone distinguishes this case from *Boissoneault*. And that testimony, together with the physical evidence, was sufficient to support the defendant's conviction.

As for Van Elk's testimony, it was not as inconsistent or unbelievable as McQuiller's argument suggests. Although the evidence showed that Van Elk had not always been truthful in the past, she acknowledged and explained that in her testimony:

> Q. When you were questioned, were you completely honest in answering the officer's questioning at that time?
>
> A. No.
>
> Q. Why not?
>
> . . .
>
> A. At that point, I was just scared, nervous, I had just been arrested, I had never been arrested before. I – I wasn't sure what to say or do. I think I was trying to minimize the whole situation.

Indeed, even though Van Elk already had been sentenced in a separate matter and no longer would derive any benefit from incriminating McQuiller, she testified candidly to her own criminal conduct in having made "eight or ten" previous purchases of similarly packaged cocaine from McQuiller. She also provided what could have been embarrassing and sensitive testimony about her affair with McQuiller and receiving cocaine from him in a motel room on the night in question:

> Q. And can you describe for the jury generally what happened at the motel that night?

> A. We drank a little, partied a little and had sex.
>
> Q. Did he give you any controlled substances that night?
>
> A. Yes, cocaine.
>
> Q. How much cocaine did he give you?
>
> A. A bag or two, I'm not 100 percent sure.
>
> Q. How was that bag packaged, if you recall?
>
> A. It was in the corner of a bag, knotted off.
>
> . . .
>
> Q. Did you use the cocaine that night that he gave you at the motel?
>
> A. Yes.
>
> Q. And approximately how much did you use?
>
> A. Approximately a bag, probably $50 worth.
>
> Q. And, again, that would – did you – was it three or four lines of cocaine?
>
> A. Yes.
>
> Q. And that's typically what you would buy from him?
>
> A. Yes.

Additionally, Van Elk testified that she did not see McQuiller use any cocaine on the night in question. In fact, she testified that she did not know McQuiller to "ever" use cocaine and that she had never seen him use cocaine.

"It is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory and even untruthful in some respects was nonetheless entirely credible in the essentials of [her] testimony." *United States v.*

*O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) (internal quotations omitted).  Here, even if the jurors did not believe some of Van Elk's testimony, they still could have found Van Elk to be "credible in the essentials of [her] testimony" – testimony sufficient to establish that McQuiller had the requisite criminal intent.

While the quantities at issue in this case were relatively small, that does not preclude the defendant from having intended to distribute those quantities.  *See, e.g., United States v. Wallace*, 532 F.3d 126, 131 (2d Cir. 2008); *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995).  And the evidence in the case, including Van Elk's testimony, the physical evidence, and Special Agent Casullo's testimony, was sufficient to establish that intent.[4]  Therefore, this case is not *Boissoneault,* and McQuiller has not established his entitlement to relief under either Rule 29 or Rule 33.

### B.   INCONSISTENT VERDICT

McQuiller also argues that the jury "compromised on its verdict," suggesting that the compromise made the verdict inconsistent.  Docket Item 76 at 2 (¶ 3).  In making this argument, he again focuses on Van Elk's testimony and claims that "[i]f the jury thought [Van Elk] was believable, then [he] should have been convicted of [Count 2]" in addition to Count 1.  *Id.*  As McQuiller puts it in his papers, Van Elk "testified that she made arrangements with [him] to purchase marijuana that night, that she gave [him] $50 to pay for the marijuana, and that [he] threw the marijuana out of the car window" during the traffic stop that led to their arrests.  *Id.*  Because he was acquitted on the marijuana

---

[4] The fact that such evidence was available to the government was one reason that the Court granted McQuiller's motion *in limine* to preclude the government from introducing his multiple previous convictions for drug distribution crimes under Federal Rule of Evidence 404(b).  *See United States v. McCallum,* 584 F.3d 471, 477 (2d Cir. 2009)*.*

charge, McQuiller reasons, the jurors must have disbelieved that testimony. And if the jurors disbelieved that testimony, they should have disbelieved the testimony about the cocaine as well.

As an initial matter, the Court disagrees with McQuiller's conclusion that the verdict – acquitting McQuiller on the marijuana charge but convicting him on the cocaine charge – was inherently inconsistent. In fact, McQuiller's conclusion ignores the differences between the proof on Count 1 and that on Count 2.

For example, the cocaine found at the scene was packaged differently from the marijuana: unlike the cocaine, the marijuana was not separated into individually packaged "dosage units." In addition, Van Elk testified (1) that she actually received cocaine – but not marijuana – from McQuiller on the night in question, (2) that McQuiller used marijuana – but not cocaine – on the night in question, and (3) that on previous occasions she had seen McQuiller use marijuana – but never cocaine. Based on that evidence, the jurors might well have had a reasonable doubt about whether McQuiller intended to smoke the marijuana or to distribute it, even though they were convinced beyond a reasonable doubt that he intended to distribute the cocaine.

What is more, defense counsel actually argued to the jury that Van Elk brought the marijuana, and McQuiller brought the cocaine, so the two of them could "party" at the motel that night. And as noted above, the marijuana was found outside the driver's side of Van Elk's vehicle where she was sitting, while the cocaine was found outside the passenger side where McQuiller was sitting. For any or all of those reasons, the jury

could have found that McQuiller possessed cocaine – but not marijuana – with intent to distribute it.

And even if the verdicts were inconsistent, that would not entitle McQuiller to a new trial. As the Supreme Court has explained, inconsistent verdicts may result from compromise, lenity,[5] or merely mistake. See *United States v. Powell,* 469 U.S. 57, 65 (1984). Such inconsistent verdicts may favor either the defendant or the government; but the government, of course, would be precluded from challenging an acquittal. *Id.* Allowing defendants who have been "given the benefit" of an acquittal on certain counts "to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them," would be "imprudent and unworkable." *Id.* at 66. Moreover, such challenges either would be based "on pure speculation" or would require courts to make improper inquiries into the jury deliberation process. *Id.*

This Court rejects McQuiller's invitation to speculate or to inquire improperly into the jury's deliberations. Based on *Powell* and related authority, there is "no reason to vacate" McQuiller's conviction even if, as he claims, "the verdicts cannot rationally be reconciled." *Id.* at 69; *see also United States v. Moran-Toala,* 726 F.3d 334, 336 (2d Cir. 2013) ("[I]t is well established that a criminal defendant cannot exploit . . .

---

[5] Lenity seems a particularly plausible explanation here, considering the disconnect between public opinion and federal law criminalizing marijuana. According to an October 2015 Gallup poll, a clear majority of Americans (58%) believe that "marijuana use should be legal." Jeffrey M. Jones, *In U.S., 58% Back Legal Marijuana Use,* GALLUP (Oct. 21, 2015), http://www.gallup.com/poll/186260/back-legal-marijuana.aspx. And during *voir dire* in this case, several potential jurors were not shy in expressing reservations about whether they could impartially apply the law to convict a defendant charged with distributing a small amount of marijuana.

inconsistency in the jury's verdicts to secure a new trial."); *O'Connor,* 650 F.3d at 856 ("inconsistent verdicts are not a ground for reversal"); *United States v. Acosta,* 17 F.3d 538, 545 (2d Cir. 1994) ("[I]t has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty.").

The Court's duty here is not to look "into the jury's thought processes, mindful that they sometimes reflect compromise or lenity," but rather is to "look only to the verdict the jury returned" and "uphold that verdict as long as the evidence was sufficient to permit a reasonable jury to reach that conclusion." *United States v. Escalera,* 536 F. App'x 27, 31 (2d Cir. 2013). Here, as already noted above, the evidence was sufficient.

### C.  READBACK OF VAN ELK'S TESTIMONY

McQuiller finally argues that the Court erred when it allowed the jury to hear a readback of a "short snippet of direct examination" in which Van Elk testified that McQuiller gave her cocaine when they were in the motel room. Docket Item 76 at 3 (¶ 5). In addition, McQuiller seems to argue that the Court erred when it denied McQuiller's request for a second readback of a portion of the Van Elk cross-examination. *Id.*[6] Those arguments are without merit.

Jury deliberations began at 12:17 p.m. on the afternoon of January 25, 2016. Later that afternoon, the Court received two notes from the jury in quick succession,

---

[6] Defense counsel's affidavit submitted in support of McQuiller's Rule 33 motion argues that this Court "committed error when it refused to instruct the jury as requested by the defense during the last read back." Docket Item 76 at 3 (¶ 5). But there was no request for any instruction to the jury concerning the readback. So the Court reads this as a reference to the denial of the defendant's request to read back – for the second time – a portion of the cross-examination that already had been read back once.

both of them signed and dated by the foreperson.  The first note, received at about 3:45 p.m., said:  "We need the testimony of Kimberly Van Elk."  The second note, received minutes later, said:  "Instead of the entire testimony of Ms. Van Elk, we only need the cross-examination (defense testimony)."  The Court shared both notes with counsel before responding to the jury.  Because neither party objected to reading back the requested testimony, which the Court noted "would take a relatively short time," the entire cross-examination was read back to the jury.  At the end of the day on January 25, when the readback of the cross-examination was complete, the Court indicated its intention to read back the redirect and recross examinations the next morning.  Again, neither party objected.[7]

   The readback of the recross and redirect examinations began first thing in the morning on January 26, 2016, the second day of deliberations.  About a half hour after the readback concluded, the Court received another note from the jury, this one stating: "We thought we heard Kim Van Elk admit that she used cocaine in the hotel room.  If so, where in the testimony is the admission?  We did not hear it in the cross-examination or redirect."  The Court again shared the note with the government and the defense.  Outside the presence of the jury, the Court then identified what seemed to be the testimony that the jury was requesting and invited the parties to submit proposals regarding how to proceed.

   The government proposed that the Court have "four passages" read back to the jury.  The defendant initially agreed to the first passage (so long as it ended at page 13,

---

[7] In fact, defense counsel later stated, "the Court, in fairness, agreed to the redirect and then the recross, and I felt that was fair."

line 13, of the transcript of Van Elk's testimony), objected to some or all of the other three passages, and also requested that certain portions of the cross-examination – which the jury had just heard – be read back for a second time. After hearing the parties' arguments, the Court denied both sides' requests for a readback of anything other than what the jury requested: Van Elk's testimony about her "use of the cocaine in the hotel room."[8] A little less than an hour after the readback of that testimony concluded, the jury reached its verdict.

Reading back the testimony the jury requested – and only the testimony the jury requested – was appropriate and fair. *See United States v. McElroy,* 910 F.2d 1016, 1026 (2d Cir. 1990) (finding no error in court's decision to read back one particular portion of testimony based on court's "reasonable interpretation" of jury's request). Although a district court has broad discretion to deny a jury's request for a readback, the Second Circuit has repeatedly and "emphatically" indicated its "preference for providing juries with readbacks of testimony when requested during their deliberations." *See United States v. Criollo*, 962 F.2d 241, 243-44 (2d Cir. 1992); *see also United States v. Holmes*, 863 F.2d 4, 5 (2d Cir. 1988) ("generally the better course of action is for a district court to allow the reading of testimony requested by the jury"); *United States v. Damsky*, 740 F.2d 134, 138 (2d Cir. 1984) ("urging a jury to try to remember testimony before asking for a readback is not generally error" but also "does not seem to be

---

[8] This portion of Van Elk's testimony, first identified by the Court, also was part of the first of the government's four requested passages. The Court stopped the readback of that testimony at page 13, line 13, of the Van Elk transcript as the defendant had requested. This testimony also is quoted, in part, in the portion of this decision addressing the sufficiency of the evidence. *See supra* at II(A).

particularly wise policy"). Here, the Court followed the Second Circuit's strong preference by permitting the jury to hear readbacks of the very testimony the jury wanted to hear.

The Second Circuit also has admonished that when responding to requests for readbacks, district courts should consider "the possibility" that the readback might place "undue emphasis on a particular portion of testimony read out of context." *Criollo*, 962 F.2d at 243. District courts are to balance that possibility against "the jurors' need to review the evidence before reaching their verdict." *Id.* Here, although the final readback was relatively specific, there was no risk of "undue emphasis" being placed on it. First, immediately before that final readback, the jury had heard the entire cross-examination, redirect, and recross of Van Elk read back, with the direct examination omitted. If that initial readback favored either party, then it favored the defense (although the government did not object). Second, the portion of Van Elk's testimony that was the subject of the final readback was precisely the testimony the jury requested and therefore concerned a specific factual issue on which the jury itself had already decided to focus. For that reason, there was no risk that the readback would *cause* the jury to place undue emphasis on a particular portion of testimony read out of context.

McQuiller also argues that "[b]y focusing on the testimony that Mr. McQuiller had distributed cocaine to Ms. Van Elk, the jury effectively convicted Mr. McQuiller on something that the indictment did not charge: the distribution of cocaine." Docket Item 76 at 3 (¶ 6). The defendant again is asking the Court to invade the jury's thought

process, and the defendant again is speculating about that thought process. But his argument fails for a more fundamental reason as well.

Depending on the specific circumstances, evidence of actual distribution may well be sufficient to prove possession with intent to distribute; indeed, if a defendant distributes a substance in a hand-to-hand sale as was alleged here, then he may well have – and perhaps *must* have – possessed that substance with intent to distribute it the moment before he distributed it. In other words, the jury certainly could have concluded, based on the evidence in this case, that *before* McQuiller distributed cocaine to Van Elk on the night of April 22, 2015, he possessed that cocaine with the intent to distribute it. In fact, the crimes of distribution and possession with intent to distribute "merge" into a single offense for the purposes of double jeopardy when they are based on the same evidence of a single transaction. *See, e.g., United States v. Gore*, 154 F.3d 34, 47 (2d Cir. 1998); *United States v. Gomez,* 593 F.2d 210, 215 (3rd Cir. 1979); *United States v. Curry,* 512 F.2d 1299, 1305–06 (4th Cir. 1975). That longstanding rule reveals a simple truth: evidence of actual distribution may be – and often is – sufficient to support either charge.

Furthermore, evidence that McQuiller distributed cocaine to Van Elk on the night in question was, at the very least, admissible under Federal Rule of Evidence 404(b). In other words, the jury could well have concluded that because McQuiller gave Van Elk at least one of the small baggies of cocaine, he likewise intended to distribute the more-than-a-dozen baggies of cocaine left in his possession. For that reason, the jury's

request for a readback made sense, and reading back exactly what the jury asked for was the appropriate response.

Finally, the Court's denial of the defendant's request for an additional readback of part of the cross-examination also was appropriate. The jury already heard that testimony *twice*: once during the cross-examination itself and once during the first readback. In addition, the testimony that the defendant wanted to be read back was not responsive to the jury's very specific note requesting Van Elk's admission that she used cocaine in the motel room. *See United States v. Salameh*, 152 F.3d 88, 133 (2d Cir. 1998) (affirming denial of readback where testimony was not responsive to jury's request). Indeed, reading back certain excerpts that the jury did not ask for may well have placed "undue emphasis" on certain testimony taken "out of context" – the very error about which the Second Circuit has warned. *See Criollo*, 962 F.2d at 243.

## CONCLUSION

For the reasons stated above, McQuiller's post-trial motions, seeking either a judgment of acquittal under Rule 29 or a new trial under Rule 33 (Docket Items 76 & 77), are in all respects DENIED.


SO ORDERED.

Dated:  April 2, 2016
        Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE